Good morning. We have three cases set for oral argument. We also have one case set for resolution on the briefs. The first case for oral argument is E-Associate, Inc. v. Clickbooth 15-1332. Mr. Newman. Good morning, Your Honors, and may it please the Court. E-Associate's 660 patent claims are not directed at an abstract idea, but rather the very specific process of providing webmasters with access to an existing merchant affiliate system without ever having to join that system. The gist of the 660 patent is access. The gist of the patent is not the abstract idea of tracking and receiving of referrals. What do you mean by the gist? Your Honor, when the Court reads the claims, either alone or in combination with one another, the theme, the gist, the heart of the patent is it provides access. Webmasters have access to multiple merchant affiliate systems that they never have to join. What's your legal authority that would compel the District Court to hunt for the gist or the heart of a patent? Your Honor, the Court must, if there is an abstract idea, search for an inventive concept. But the first step is to look at the claims and find out what are they directed at. What's the purpose of the patent? The purpose of this patent is to provide access. So that's looking at the limitations, claim limitations? Yes, Your Honor. Looking at the claim limitations. So it's not the heart or the gist we're looking for, correct? Your Honor, I would disagree, but perhaps it's just a semantic game. The purpose of the patent, what the claims are directed at, the gist of the patent, I believe that jurisprudence would find is the same. And in this case, the gist of the patent, the purpose of the claims, what the claims are directed at, is access. It's not the abstract idea of tracking and receiving of referrals. Rather, the merchant has always been capable of tracking and receiving of referrals. And even after the invention is implemented, the merchant will continue to track and receive referrals in the same way it always has. The only difference is that now webmasters have access to multiple merchant affiliate systems. Whereas before, in order to gain that access, the webmasters had to join each and every system and adopt unique coding systems from every single merchant. The merchants, similarly, have access to a huge pool of webmasters. And the merchants need not provide codes to all these webmasters. The webmasters come ready to access the system through the virtual affiliate system. The 660 patent adds an inventive concept on the preexisting technology, on the prior art. Specifically, the patent requires that there are three specialized computer systems. Two existed before their preexisting technology. The third is added by the invention. And not until those three specialized computers are in place... What specialized computer are you talking about? There are three. The first is... Why don't you talk about the one that you think is the new inventive concept? Well, the inventive concept is the four-step process built upon the three computers. Three computers is a foundation... Or the computers specialized. Yes, Your Honor. The first is an existing merchant affiliate system. That's not a generic system. I can't run that on my common, everyday laptop. It's a system that's capable of receiving requests from merchants, of assigning a specialized coding system, of tracking, accounting for revenue, making payouts. Why couldn't you run it on your laptop if you had the right software? Your Honor, I suppose that any specialized computer could run, or any specialized system could run on any computer with the right... You can't call it a specialized computer if you're just talking about a computer that's programmed to do a certain thing. The Supreme Court's made that really clear. Well, Your Honor, for example, a GPS system was found to be specialized, but GPS is in every device. It's on common, everyday computers. It's on cell phones. But it's considered specialized because of the software that underlies it. And here, the merchant affiliate system, the existing system, is capable of doing what a common, everyday computer cannot. Can GPS run on a common, everyday computer? It can, Your Honor. So you've answered your own question. My laptop is GPS-enabled. I don't know, however, that my laptop could run an existing merchant affiliate system. I don't believe my laptop is powerful enough. It certainly isn't programmed to assign codes to multiple webmasters. I mean, you can't be arguing that a computer is a special-purpose computer or not, depending upon its capacity and operating memory and the like. It's still a general-purpose computer until you program it. Your Honor, every computer is a general-purpose computer until programmed. That's why the Supreme Court has basically said you don't get a patentable invention by programming a computer. You don't get a patentable invention. Unless the program itself is some kind of technological innovation. So how does your program improve the general-purpose computer? Improve it in its running? The existing merchant affiliate system is only capable of accepting requests from webmasters that sign up with the system, who adopt the coding system of the existing merchant affiliate system. With the invention... Is that an Internet-centric problem? It is, Your Honor, because affiliate systems never existed before the Internet. The affiliate system is unique to the Internet. It allows for a webmaster to provide referrals to merchants, and it's done through a computer coding system. Your innovation isn't an affiliate system, is it? It is not, Your Honor. Your innovation is you've created a broker to broker these deals. No, Your Honor, it's not a broker. It's an access point. It's not a broker because it's not offering the services of the merchant, but rather provides technology that allows a webmaster to gain access to the merchant affiliate system without ever having to join. Before the 660 patent, the way of affiliate systems was every webmaster had to join multiple merchant affiliate systems, and there are two kinds. There is a direct and a hub. So webmasters had to join several direct, several hub, and each had its own coding system. So the webmaster was burdened with signing up in multiple systems and adopting multiple codes and programming its system to work with every single one of these merchants, whereas now with the virtual affiliate system... Let me ask you this. I mean, you're trying to say that yours is patentable because it improves the preexisting merchant affiliate system. Why is the preexisting merchant affiliate system patentable under recent Supreme Court precedent? Isn't it just doing an abstract idea, organizing conventional human economic activity through a computer? Your Honor, I have two answers to that question. Why is the existing merchant affiliate system patentable? The first obvious answer is because the patent office granted a patent to Amazon.com. Well, that's not a very good answer. I mean, we've rejected, the district court has rejected, and the Supreme Court has rejected dozens of patents under 101 that the patent office granted. I'm not here to argue that the existing merchant affiliate system is patentable. I'm here to argue that the improvement upon this... Well, if the existing one contains an abstract idea that's not patentable, you're doing it slightly better because you program it differently surely isn't patentable either, is it? Your Honor, the 660 patent provides access to the existing merchant affiliate system. The existing merchant affiliate system is patentable because it provides for a transaction that was never capable before the Internet. You have an existing affiliate system, and you're saying that your patent directs traffic between these affiliate systems. No, Your Honor. The patent provides access. It doesn't direct traffic. It provides access. So it's like a portal? What would you call that? Traffic light? It allows for a portal that never existed. In the past, a webmaster had to join multiple systems, and merchants had to attract multiple webmasters. Whereas with the 660, what happens now is there's a single... I called this a broker before, and then I thought, well, maybe I should ask whether we're dealing with a middleman. But now that we're dealing with a portal, how is that not an abstract idea? Well, I suppose that if we limit it just to a portal... You're the one that's arguing the gist of the patent. It's access. I don't agree that we look for the gist of a patent or the heart of a patent when we're conducting a Section 101 analysis, trying to determine whether the claims are directed to an abstract idea. So now I'm going to buy your approach. I disagree with that. So if I look at what's the gist of your patent and you tell me it's a portal, then I say you've embraced an abstract idea. Well, Your Honor, if the patent said provide a portal and apply it to the Internet, that would be an abstract idea. Well, that's what you said. But, Your Honor, this patent is specific and has four steps that weren't implemented before the 660 invention. It requires the three computer systems, which, Your Honor, I believe are specialized, and builds upon them with four steps that didn't exist in the prior art. Why are they specialized? They're specialized because they only exist in the realm of merchant affiliate systems. It's not off-the-shelf software.  They're not specialized computers. There's three systems in place. Earlier you had said specialized computers. You're walking away from that. Where in Claim 1 does it talk about three specialized computers? You're talking about all this as if the claims actually say this, but, I mean, is Claim 1 representative? It seems like it's representative about your system. And it talks about configuring systems and adding URLs and things like that. Your Honor, Claim 1 is representative. And I can identify the three systems as we review the claim. There's four steps to the claim. The first claim is the virtual affiliate system will configure the existing merchant affiliate system. Now, before the patent, there was never a configuration of an existing merchant affiliate system. Rather, merchant affiliate systems assigned codes to webmasters, and both the webmasters and the merchants were limited to that coding system. But now with Step 1 of the patent... So when somebody goes to a certain web page and clicks on a link to a merchant, that webmaster gets credit somehow for that click, and may get even more credit if a sale goes through. Is that right? Is that the basics of what's happening here? Yes, Your Honor, with one exception. The exception is Your Honor is missing the fact that the webmaster never joined the system. In your patent. That's correct, Your Honor. This is simply a referral system. No, Your Honor, because the referral system is already in place. The merchant operates the referral system and has a system in place for tracking and receiving referrals. That system remains. The only difference is that now the webmaster is receiving many more referrals from webmasters that never signed up with it. It doesn't have to market. It doesn't have to direct its code to compatible systems. It simply operates an existing merchant affiliate system. But your problem is that this referral system itself is an abstract idea. And so it fails under Step 1 of Alice. You have to find something that takes us out of the abstract realm under Step 2 of Alice. You're into your rebuttal time, but I'd like for you to pursue Judge Hugh's question. Let's move to Step 2 of Alice and see if you can salvage the patent there. Thank you, Your Honor. The answer to your question is the patent does not claim tracking and receiving of referrals. The existing merchant affiliate system tracks and receives referrals, has always been able to, and will continue to in the same way it always has. This patent does not tie that up, does not preempt it, does not claim it. This patent claims providing access, webmasters, to the existing merchant affiliate system, which never occurred before, and it saves both the webmasters and the merchants the administrative burden of signing up with multiple. Would you say that the application steps of the claim are conventional and well-known? No, Your Honor. The claim is not conventional and well-known because before the 660, there was a different world in affiliate system technology, where webmasters signed up directly with hubs or direct merchants and had to adopt coding systems from multiple sources, whereas now there's only a single coding system and a single access point, the virtual affiliate pooling system. I'll add back to the rebuttal time, given the questions we were asking. Thank you very much. Thank you. Mr. Franklin? Yes. Is that correct? Now, you've divided your time. Let's see here. So you have seven minutes, right? Correct. Okay. May it please the Court. Plaintiff E-Sociate has talked about access, but access is just the flip side of receiving referrals. And E-Sociate's patent is undeniably related to receiving referrals and tracking referrals from referral sources. E-Sociate has merely applied that idea to the preexisting technological environment of the Internet with its preexisting affiliate systems, which E-Sociate's patent admits were commonplace on the Internet. E-Sociate may have moved some of the record-keeping to a merchant middleman. Do you think that preexisting affiliate system is patentable? No. It's just a computer that's been programmed to run a merchant's affiliate program. And not only is it not patentable, but it is a conventional part of the Internet. The patent tells us that most merchants currently use some sort of affiliate system to run their affiliate program. And merely taking that conventional and preexisting part of the Internet and using it in the claims does not suffice to transform the nature of the claim into something that's not abstract. So here we've got an intermediary performing the electronic record-keeping. That's not an inventive concept sufficient to transform the abstract idea to a patent-eligible invention. And merely reorganizing the economic relationships so that the webmaster, instead of contracting directly with the merchant, instead contracts with the middleman, is merely a method of reorganizing human relationships, which under Alice is not patentable. Additionally, the patent really isn't directed to the idea of access. The patent talks about receiving the referrals. And the end result of the patent claim, claim one, which is representative, is the generation of a URL, which is just a string of characters. The claim doesn't talk about what happens with that URL after it's generated. Additionally, webmasters were already able to access the merchant. You could always put a URL hyperlink on a web page and be able to link to Amazon.com or Target.com or what have you. The issue was one of tracking for purposes of compensation. That's electronic record keeping, which, as we know from Alice, is not sufficient to transform the nature of the claim. So let's go through the steps of the claim. We start with the preamble, which merely identifies the referring webmasters, those are the virtual affiliates, and the referral recipient, which is the existing Target affiliate system. These are commonplace participants on the Internet. They're just people, the merchant and the webmaster. The configuring step merely configures the existing system, the existing affiliate system, to do what affiliate systems do, and that's receiving referrals. The subset of assigning IDs, again, that's just part of conventional electronic record keeping on the Internet. The patent, not only does that just make common sense, but the patent tells us that unique ID numbers would have been apparent to those of skill in the art. That's at column 11. And so here we're just talking about the assignment of ID numbers for electronic record keeping. The next step, the receiving, that's just using the Internet for its conventional communication function. And it's conventional to receive a URL. It's also conventional to receive a URL containing an ID, and we know that because the prior art system in the patent had an ID in the URL. And conveying IDs in a URL, well, that's how the Internet works. That's the preexisting technological environment. The next step is correlating. Again, this is mundane record keeping, like the updating of the activity log in the Ultramarchal case. The specification talks about the lookup table that cross-references two codes. And then finally, the generating step. This just uses conventional Internet communication for its communication function. The prior art example already shows that URLs were used to convey ID codes. And once we've been through the steps of the claim, there's nothing left in the claim that would be sufficient to transform its nature into something that's patent eligible. And with that, I will reserve the remaining time for my co-counsel, unless the panel has any questions. Thank you very much. Mr. Jenks. Thank you, Your Honor. May it please the Court. You have eight minutes. I think I'll use two. Two minutes. That'd be great. Maybe not quite that much. The Court asked whether or not the system was a broker. In effect, I think the Court was more correct later in middleman. Really, this is a system that takes over the bookkeeping from the merchant so that they can do it all in this associate's computer instead of on the merchant's computer. In terms of the improved or specialized computer, I think the Supreme Court's been clear that when you program a general-purpose computer to do normal general-purpose functions, you're there. And I would refer the Court to the blue brief, page 52. The existing merchant affiliate system is improved because webmasters, this is the associates, can now send its traffic in exchange for compensation, even if the webmasters are enrolled in a different affiliate system. What that's telling you is that this invention, if there is a gist, is directed to the human relationships of where you've signed your contracts. Are you going to sign them with the middleman, within contracts with the merchants, or are you going to send them to the merchants? If I run a cooking blog, and during the course of this cooking blog, I write articles about products that I suggest you buy, like this is a good knife, this is a good waffle iron, and I put a link to a certain merchant to go purchase this from, if I'm part of their affiliate system, I'm probably going to get credit when somebody reading my blog goes to this web system and buys it. But if I didn't belong to the affiliate system before this invention, I might not. Is that basically what we're talking about? That's correct, Your Honor. So if you haven't signed up with the merchant, you can always put the hyperlink on your website, and it will always take you to the merchants. You can put Amazon.com on any website that you want. Now, you might not get paid unless you sign up with the merchant. Or in this case, with this invention, if it is an invention, the idea is you'll sign up with the middleman. Isn't that what the invention is directed to, to get paid, to get compensated, to ease that traffic? If we're going to look at the purpose of the invention, and you can see this throughout the patent, including the abstract, where it talks about compensation. Why isn't that a computer-specific or an Internet-specific problem that needed to be resolved? Well, I think when we look at what's Internet-specific, we look at the abstract idea first. And here, what the claim is directed to and what it recites is the receipt of referrals and then the tracking thereof. So that is not a problem that occurs only on the Internet. That's a problem that, as the district court recognized, is a fundamental economic practice, keeping track of who's sending me referrals so that I can reward them later. Now, the need to sign up with particular systems is really ordering the relationships between the humans, not an Internet-specific problem like a technical problem that's in, for example, the safe harbors in Alice. Okay, thank you very much. Thank you, Your Honor. Mr. Newman, you have five minutes. Thank you, Your Honor. The public policy underlying the exception to Section 101, abstract ideas, is that a patent cannot tie up an idea that's commonplace, such as hedging risk or intermediated settlements, by simply saying apply it to a computer. In this case, Associates' invention doesn't tie up anything. It doesn't tie up tracking and receiving of referrals. The merchant affiliate system did it before, and it will continue to do it in the same manner that it has. Wouldn't it tie up the process of linking actors on the Internet? No, Your Honor. The actors are linked because the webmaster, before the invention, would sign up with the merchant and continues to do that. In fact, this patent doesn't even tie up the idea of a virtual affiliate system. Another inventor could come along with a better process and provide access the same as Associates' 660 patent, just in a different way, and that perhaps would be patent-eligible subject matter, and it would be better than this system. This system does not... Why isn't this case basically on all fours with Ultramercial? I mean, it's almost the same kind of idea. I mean, there it was ads on the Internet, I think, and this is referrals. I mean, it sounds like the similar kind of commercial activity that's adapted to the Internet environment, but is still an abstract idea. Your Honor, Ultramercial is like commercials on television, but applied to the Internet. The only distinction was the user was allowed to pick his commercial. But why isn't yours, like referrals in the real world, applied to the Internet? Because this claim does not... The patent claims are not directed at referrals. They're directed at access. Referrals existed before. They will continue to exist. You say that, but, I mean, you read through the claims, you know, the parts of Claim 1, and it talks about configuring it to do this, sending a request, doing that. That all sounds to me like sending referrals back and forth and determining who gets compensated for them. The referral system is already in place. Associates' patent improves on it by allowing referrals from other sources. So under Ultramercial... Yeah, but that's your problem. The referral system is abstract. It's not patentable. A referral system is abstract? I agree that a referral system is abstract. Improving an abstract idea... I mean, you still haven't convinced me that you've improved it in a patentable way. You've just improved it in a way that doesn't require the person to be registered as part of the affiliate system. But the same could have been said for an in-person affiliate system. Your Honor, under Ultramercial, were that patent to survive, then it would be impossible to offer content in exchange for advertising. Here, it's still possible to offer referrals in every context, even within the context of an affiliate program or virtual... If a referral system is abstract and you're given access to referrals, then aren't you preempting the entire referral field? No, Your Honor. I would challenge my friends on the other side to come up with any idea that's commonplace that could not be practiced if the Associate 660 patent were to survive. What is this, Pan? What can you tell me that it relates to DDR? This is similar to DDR. In DDR, users would go to a website and they would click on a link. Traditionally, those users would be redirected to another website, a merchant's website, just like here. But under DDR, they'd click on that link, they'd remain in the same website, which retains the same look and feel, but they're able to buy products from the merchant. It recreated that website. Essentially. And in this case, that same unconventional result occurs. When a user clicks on a link at the webmaster, rather than being directed to a merchant affiliate system using the merchant affiliate system's code, it is directed to the virtual affiliate system where there's a correlation and generating a URL that is functional in the merchant system so that the webmaster can send traffic. Before, a webmaster could not send traffic without configuring its own system to comply with the system that the merchant provided. Now, the webmaster need not do that. The webmaster only needs a single code from a single source and does not need to configure its system to work with several other systems, but rather a single system, the virtual affiliate system. And so unlike Bilski or Alice, where there was an idea that we're all familiar with and simply apply it in a technological field or apply it on the Internet or apply it to a computer, this is a process for access that never existed before and doesn't preempt anything, but rather receiving and tracking of referrals and electronic bookkeeping has always been around, always will be around, can continue. Associates Patent doesn't claim that. It's directed at providing webmasters with access to an existing merchant affiliate system without having to join that system. Thank you. Okay. Thank you very much for your arguments.